IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY**, a Delaware corporation, and **FORD MOTOR CREDIT COMPANY LLC**, a Michigan limited liability company,<br><br>       Plaintiffs,<br><br>v.<br><br>**STERLING 925, LIMITED**, an Illinois corporation, doing business as **LEASE END SERVICES**,<br><br>       Defendant. | Civil Action No. 2:13cv11938<br><br>Honorable |

GREGORY D. PHILLIPS (USB 4645)
CODY WINCHESTER (USB 7197)
**PHILLIPS RYTHER & WINCHESTER**
600 East 124 South
Salt Lake City, Utah 84102
Tel:    (801) 935-4935
Fax:    (801) 935-4936

Attorneys for Plaintiffs

**PHILLIPS RYTHER & WINCHESTER**
3300 Washtenaw Avenue, Suite 280
Ann Arbor, Michigan 48104
Tel:    (801) 935-4935
Fax:    (801) 935-4936

<u>**VERIFIED COMPLAINT**</u>

Plaintiffs Ford Motor Company and Ford Motor Credit Company LLC ("FMCC")

(collectively "Ford"), for their claims against Defendant Sterling 925, Limited doing business as

Lease End Services ("Sterling 925"), allege as follows:

## NATURE AND SUBSTANCE OF THE ACTION

1.      Ford files this action against Sterling 925 for trademark infringement, false designation of origin, and false advertising under the Lanham Act (15 U.S.C. § 1051 *et seq.*), and unfair and deceptive trade practices in violation of Michigan statutory and common law based on Sterling 925's execution of a fraudulent scheme in which Sterling 925 misrepresents itself as the agent of FMCC to induce Ford vehicle lessees to purchase and finance their leased vehicles through Sterling 925 upon lease expiration.  Operating under business names such as "Lease End Services," Sterling 925's fraudulent scheme begins with identifying Ford customers with soon-to-expire auto leases.  Sterling 925 then sends "notices" to these Ford customers designed to appear as if they are lease-end instructions from FMCC.  The notices (1) are signed by "Lease Termination Department," (2) inform the customer when his or her lease is scheduled to mature, and (3) direct the customer to contact Lease End Services to discuss "your 'pre-approved' options."  On the phone with the lessee, Sterling 925 then falsely represents (1) that it is FMCC's agent for all lease returns, (2) that it is FMCC's agent in accepting credit applications to borrow money to purchase the leased vehicle, (3) that it is authorized by FMCC to obtain financing on the lessee's behalf from sources other than FMCC, (4) that it offers payoff terms superior to those offered by the Ford dealership through which the vehicle was leased, and (5) that charges added to the price of the leased vehicle by Sterling 925 are required to reimburse Sterling 925 for charges imposed by FMCC and state regulatory and tax authorities.  In fact, Sterling 925 has no connection to Ford or FMCC whatsoever, sells the leased vehicle to the lessee for an amount that is much higher than the purchase price available from Ford pursuant to the terms of the lease agreement, and adds to that inflated price fees and assessments that are either inflated or fabricated.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction over this action pursuant to:

(a)      The Judicial Code, 28 U.S.C. § 1331, relating to "federal question" jurisdiction;

(b)      Section 39 of the Lanham Act, 15 U.S.C. § 1121, giving this Court jurisdiction over all actions arising under the Lanham Act without regard to the amount in controversy;

(c)      Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), relating to the counterfeit, reproduction, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of goods;

(d)      Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), relating to the use of false designations of origin and/or sponsorship tending falsely to describe or designate the source, and/or sponsorship of goods affecting commerce, and relating to false advertising and trade dress infringement and dilution;

(e)      The Judicial Code, 28 U.S.C. § 1338(a), conferring on this Court jurisdiction over actions arising under federal trademark laws; and

(f)      The Judicial Code, 28 U.S.C. § 1367, providing for supplemental jurisdiction over the state law claims in this action.

3.      This action arises out of wrongful acts committed by Sterling 925 that are intentionally targeted at Ford in this District that subject Sterling 925 to personal jurisdiction here.   The violation of a trademark holder's trademark rights occurs where the trademark holder resides, which is in this District, and, on information and belief, Sterling 925 has offered to

furnish or render or has furnished or rendered the infringing and objectionable products and services at issue in this suit to Michigan residents.

4.      Venue is proper in this judicial district under 28 U.S.C. § 1391.

## THE PARTIES

5.      Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

6.      Ford Motor Credit Company LLC, is a Delaware limited liability company with its principal place of business in Dearborn, Michigan.  Ford Motor Credit Company LLC also does business under the name Lincoln Automotive Finance.

7.      Defendant Sterling 925, Limited is an Illinois corporation with its principal place of business located at 1401 W. Lake Street, Suite B, Addison, Illinois 60101.

8.      Sterling 925 conducts business under the names "Lease End Services" and "Carbiz4u."

## FACTS COMMON TO ALL CLAIMS
*Ford's Trademark Rights*

9.      Ford is one of the world's largest producers of cars and trucks.

10.     Ford was incorporated in Delaware in 1919, after acquiring the business of a Michigan company, also known as Ford Motor Company, which was incorporated in 1903 to produce and sell automobiles designed and engineered by Henry Ford.  In addition to producing, leasing, and selling cars and trucks, Ford also provides retail customers with a wide range of after-sale vehicle services and products through its dealer networks and other channels, including extended service warranties and service plans.

4

11.     In North America, Ford markets these products and services under several brands and trademarks, including FORD®, FORD CREDIT®, and FORD MOTOR CREDIT COMPANY™.

12.     FORD® is one of the best known and highly regarded trademarks in the world. Ford sold its first automobile at least as early as 1903, and has sold automobiles and many other goods and services under the world-famous FORD® trademark since that time.

13.     Ford holds numerous registrations for FORD® and other marks including FORD® in the United States and worldwide.  Ford first registered the trademark FORD® with the United States Patent and Trademark Office in 1909, and has subsequently obtained numerous other registrations for that mark, including but not limited to U.S. Registration No. 74,530, a true and correct copy of which is attached hereto as Exhibit A.  Ford's registrations for the FORD® mark are valid, unrevoked, subsisting, and incontestable, and constitute *prima facie* evidence of Ford's exclusive ownership of the FORD® mark.

14.     Ford has a federal trademark registration for FORD CREDIT® (Reg. No. 3,738,185), a true and correct copy of which is attached hereto as Exhibit B, which Ford has used since 1971, and a federal trademark registration application pending for FORD MOTOR CREDIT COMPANY™ (Serial No. 77,696,526), for use in connection with automobile and truck leasing services and insurance and financial services, including lease purchase financing for new and used cars.

15.     Ford has continuously used FORD®, FORD CREDIT®, and FORD MOTOR CREDIT COMPANY™ (collectively the "Ford Marks") in connection with automobile and truck sales and leasing and related goods and services, including insurance, financial, and warranty services, since well before the acts of Sterling 925 complained of herein.

5

16.     Ford has spent hundreds of millions of dollars and has expended significant effort in advertising, promoting, and developing the Ford Marks throughout the world.  Ford uses the mail and the phone in advertising.  In particular, Ford Credit uses the phone and mail to communicate with Ford and Lincoln lessees about their leases and lease end options.  As a result of such advertising and expenditures, Ford has established considerable goodwill in the Ford Marks.  The Ford Marks have become widely known and recognized throughout the world as symbols of high quality automotive goods and services.  The Ford Marks are world-famous and distinctive, and have become associated by the consuming public exclusively with Ford.  The Ford Marks are an invaluable asset of substantial and inestimable worth to Ford.

*Sterling 925's Misrepresentations and Misuse of the Ford Marks*

17.     Sterling 925 is not in any way affiliated with, authorized by, or sponsored by Ford and has no authority to use the Ford Marks.  Despite its lack of affiliation, authorization, or sponsorship, Sterling 925 unlawfully continues to use Ford's famous trademarks.

18.     To induce lessees of Ford vehicles to purchase and finance their leased vehicles from Sterling 925 rather than through Ford, Sterling 925 engages in an advertising scheme in which it makes numerous false and misleading representations, including:

(a)     Sending solicitations to lessees of Ford vehicles with soon-to-expire leases that are designed to appear as if they are lease-end instructions from FMCC.  Captioned with the title "Lease End Services, Termination Department, SECOND NOTICE," such "notices" are signed by "Lease Termination Department" and advise the customer of the month and year in which the customer's lease is scheduled to mature and instruct the

6

customer to "call me at your earliest convenience to discuss your **'pre-approved'** options."   (*Emphasis in original*).

(b)     Representing to Ford lessees that it is FMCC's agent for lease returns, including representing to lessees that they could obtain more favorable terms through Sterling 925 than could be obtained by contacting the Ford dealership through which their vehicle had been leased.

(c)     Representing to Ford lessees that it is FMCC's agent in accepting credit applications and has been authorized by FMCC to secure financing for the lessee to buy the leased vehicle at the lowest bank rate available and is not required to secure financing through FMCC.

(d)     Representing to Ford lessees that they will save money on the payoff price and get a lower interest rate on an auto loan by letting Lease End Services "handle the arrangements."

(e)     Representing to Ford lessees that the payoff terms offered by Lease End Services are superior to the payoff terms that will be available from Ford dealerships.

(f)     Inflating the payoff required by FMCC and representing to Ford customers that the inflated payoff is the payoff required by FMCC.

(g)     Fabricating or inflating fees and taxes added to the payoff and representing to Ford customers that the assessments are those actually required by FMCC and state regulatory and taxing authorities, including, for example, representing to Ford customers that an FMCC document fee of $400 (which FMCC does not assess) will be increased to $600 unless

7

the customer purchases a 3-year/36,000 extended service plan from Defendant.

19.     Sterling 925's false designation of origin, false advertising, and use of the Ford Marks constitute a misappropriation of the Ford Marks and associated goodwill, and have caused and are likely to cause potential purchasers of Sterling 925's products and services, as well as the public at large, to believe that Sterling 925 and Sterling 925's services and products are affiliated with, authorized by, sponsored by, or endorsed by Ford.

20.     On or about January 31, 2013, Ford's counsel sent a cease and desist letter to Sterling 925 demanding that Sterling 925 cease and desist from violating and infringing Ford's rights.  A true and correct copy of the cease and desist letter is attached hereto as Exhibit C.

21.     On or about February 4, 2013, Sterling 925 responded to Ford's cease and desist letter and refused to agree to Ford's demands.  A true and correct copy of Sterling 925's letter is attached hereto as Exhibit D.

22.     Ford has subsequently conducted an investigation of Sterling 925's practices, including locating and interviewing lessees solicited by Sterling 925 who were led to believe that they were dealing with FMCC.  As a direct and proximate result of Sterling 925's unlawful conduct, Ford has suffered irreparable harm to the Ford Marks.  Among other irreparable harms, when consumers receive Sterling 925's misleading "notices" and are subjected to Sterling 925's unethical and deceptive sales pitches, they will attribute these advertising practices to Ford, and Ford's goodwill and reputation will deteriorate.  To the extent that such lessees discover that the charges they were assessed by Sterling 925 were inflated and fabricated, Ford's reputation will be even further irreparably damaged, as these lessees will believe that Ford inflated and fabricated the charges and pocketed the money.  Sterling 925's deceptive use of the Ford Marks

8

dilutes, tarnishes, and whittles away the distinctiveness of the Ford Marks, lessening the capacity

of the Ford Marks to designate Ford and the goods and services provided by Ford and its

authorized dealers.  Ford is also being irreparably harmed by Ford's inability to exercise any

control over the quality of products and services provided by Sterling 925 to the public.

## FIRST CLAIM FOR RELIEF
(Federal Trademark Infringement under 15 U.S.C. § 1114)

23.    The allegations set forth above are incorporated herein by this reference.

24.    The Ford Marks are inherently distinctive, are arbitrary and fanciful, and have

acquired secondary meaning.  The public associates the Ford Marks exclusively with Ford and

Ford's vehicles, products, and services.  This is a result of the inherent distinctiveness of the

Ford Marks and of distinctiveness acquired through extensive advertising, sales, and use in

commerce throughout the United States and beyond in connection with products and services

bearing or using the Ford Marks.

25.    Despite Ford's well established rights in the Ford Marks, Sterling 925 uses and

continues to use, without Ford's authorization, the Ford Marks in connection with the

advertisement, promotion, and sale of Sterling 925's products and services.

26.    Sterling 925's actions constitute willful infringement of Ford's exclusive rights in

the Ford Marks in violation of 15 U.S.C. § 1114.

27.    Sterling 925's misappropriation of the Ford Marks or colorable imitations thereof,

has been, and continues to be done, with the intent to cause confusion, mistake, and to deceive

consumers concerning the source and/or sponsorship of Sterling 925's products and services.

Accordingly, this is an exceptional case within the meaning of 15 U.S.C. § 1117(a).

9

28.     As a direct and proximate result of Sterling 925's conduct, Ford has suffered irreparable harm to the Ford Marks.  Unless Sterling 925 is restrained from further infringement of the Ford Marks, Ford will continue to be irreparably harmed.

29.     Ford has no adequate remedy at law that will compensate for the continued and irreparable harm it will suffer if Sterling 925's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

30.     As a direct and proximate result of Sterling 925's conduct, Ford is entitled to damages, treble damages, statutory damages, the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Sterling 925 from its infringement of the Ford Marks, and Ford's attorney's fees and costs pursuant to 15 U.S.C. § 1117.

### SECOND CLAIM FOR RELIEF
(False Designation of Origin and False Advertising under 15 U.S.C. § 1125(a))

31.     The allegations set forth above are incorporated herein by this reference.

32.     Sterling 925 has used and is continuing to use in commerce false and misleading designations of origin and false and misleading descriptions of fact concerning Sterling 925's products and services and Ford's products and services, including that Sterling 925's services are those of FMCC, that Sterling 925 is acting as FMCC's agent in handling the disposition of leased vehicles, that FMCC has authorized Sterling 925 to arrange financing for the purchase of leased vehicles from third parties, and that charges assessed by Sterling 925 are required to pay charges imposed by FMCC.

33.     Sterling 925's false designation of origin and false and misleading descriptions of fact have caused actual confusion and will continue to cause actual or likely confusion regarding

the affiliation, connection, or association of Sterling 925 with Ford or as to the origin, sponsorship, or approval of Sterling 925's goods and services.

34.     Sterling 925's false and misleading descriptions and representations of fact have actually deceived or have the tendency to deceive a substantial segment of its audience.

35.     Sterling 925's deception is material, in that it has actually deceived and is likely to influence the purchasing decision of Ford lessees.

36.     Sterling 925 has caused and will continue to cause its false and misleading designations of origin and descriptions of fact to enter interstate commerce.

37.     Ford has been or is likely to be injured as a result of the false and misleading designations of origin and descriptions of fact, either by direct diversion of sales from itself to Sterling 925, by loss of sales to lessees who decide not to purchase their leased vehicles after being exposed to Sterling 925's sales practices (including Sterling 925's misrepresentations regarding the terms available to the lessee from FMCC or Ford dealers), or by a lessening of the goodwill associated with Ford's goods and services.

38.     Sterling 925's acts constitute false or misleading descriptions, false advertising, and false designations of origin and/or sponsorship in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

39.     By reason of Sterling 925's actions, Ford has suffered irreparable harm to the Ford Marks.  Unless Sterling 925 is restrained from its actions, Ford will continue to be irreparably harmed.

40.     Ford has no remedy at law that will compensate for the continued and irreparable harm that will be caused if Sterling 925's acts are allowed to continue, and is thus entitled to both a preliminary and permanent injunction.

41.     As a direct and proximate result of Sterling 925's conduct, Ford is entitled to damages, treble damages, statutory damages, and the equitable remedy of an accounting for, and a disgorgement of, all revenues and/or profits wrongfully derived by Sterling 925 from its false designations of origin and false descriptions, and Ford's attorney's fees and costs pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
(Unfair Competition under Michigan Law)

42.     The allegations set forth above are incorporated herein by this reference.

43.     Sterling 925 simulated the Ford Marks and substituted Sterling 925's lease-end services for those of Ford, thereby deceiving and misleading the public.

44.     Sterling 925's actions as described above constitute unfair competition as a matter of Michigan common law.

45.     As a result of Sterling 925's conduct, Ford will continue to suffer damage to Ford's reputation and loss of business because of consumer confusion as to the origin, sponsorship, approval, nature, characteristics, or qualities of Sterling 925's products and services.

46.     Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Sterling 925's action.

47.     Ford has no adequate remedy at law for Sterling 925's unfair competition.

48.     Ford is entitled to damages in an amount to be proven at trial, as well as Ford's attorney's fees and costs.

### FOURTH CLAIM FOR RELIEF
(Violation of Michigan Uniform Trade Practices Act, M.C.L. § 445.903)

49.     The allegations set forth above are incorporated herein by this reference.

50.     Sterling 925's above-described acts constitute unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce, in violation of Michigan's Uniform Trade Practices Act, M.C.L. § 445.903, including, but not limited to:

(a)     Causing a probability of confusion or misunderstanding as to the source, sponsorship, or approval of Sterling 925's products and services;

(b)     Using deceptive representations in connection with Sterling 925's products or services;

(c)     Representing that Sterling 925's products or services have sponsorship, approval, or characteristics they do not have, including Ford's sponsorship or approval;

(d)     Causing a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of a party to a transaction;

(e)     Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer, including the material fact that Sterling 925 is not Ford's agent in handling the disposition of leased vehicles;

(f)     Charging the consumer a price that is grossly in excess of the price at which similar property or services are sold;

(g)     Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(h)     Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

13

51.     Ford will continue to suffer damage as a result of Sterling 925's unfair, unconscionable, or deceptive methods, acts, or practices.

52.     Ford has been, and absent injunctive relief will continue to be, irreparably harmed by Sterling 925's actions.

53.     Ford has no adequate remedy at law for Sterling 925's violations of the Michigan Uniform Trade Practices Act.

54.     Ford is entitled to damages in an amount to be proven at trial as well as Ford's attorney's fees and costs.

WHEREFORE, Ford prays for judgment against Sterling 925 as follows:

1.     Under all claims for relief, that a preliminary and permanent injunction be issued enjoining Sterling 925, its employees, agents, successors and assigns, and all those in active concert and participation with them, and each of them who receives notice directly or otherwise of such injunctions, from:

(a)     imitating, copying, or making unauthorized use of the Ford Marks, including but not limited to using the name or marks FORD®, FORD CREDIT®, and FORD MOTOR CREDIT COMPANY™, or any confusingly similar variations thereof, in any manner in the United States;

(b)     importing, manufacturing, producing, distributing, circulating, selling, offering for sale, advertising, promoting, or displaying in the United States any service or product using any simulation, reproduction, counterfeit, copy, or colorable imitation of any or all of the Ford Marks;

(c)     using in the United States any simulation, reproduction, counterfeit, copy, or colorable imitation of the Ford Marks, including FORD®, FORD CREDIT®, and FORD

14

MOTOR CREDIT COMPANY™, or any confusingly similar variations thereof, in connection with the promotion, advertisement, display, sale, offering for sale, manufacture, production, circulation, or distribution of any product or service;

       (d)     using in the United States any false designation of origin, false advertising, or false description (including, without limitation, any letters or symbols constituting the Ford Marks), or performing any act that can, or is likely to, lead members of the trade or public to believe that any service or product manufactured, distributed, or sold by Sterling 925 is in any manner associated or connected with Ford, or is sold, manufactured, licensed, sponsored, approved, or authorized by Ford, including representing that Sterling 925 is the agent of Ford in any promotional communications, sales pitches, or business solicitations;

       (e)     transferring, consigning, selling, shipping, or otherwise moving in the United States any goods, packaging, or other materials in Sterling 925's possession, custody, or control bearing a design or mark substantially identical to any or all of the Ford Marks;

       (f)     engaging in any false advertising or other activity in the United States constituting unfair competition with Ford with respect to the Ford Marks or constituting an infringement of the Ford Marks, or of Ford's rights in, or to use or exploit, the Ford Marks; or

       (g)     instructing, assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

       2.     Under all claims for relief, that a preliminary and permanent injunction be issued requiring Sterling 925 to include on any advertisement or communication directed toward any Ford lessee a prominent written notice stating that Sterling 925 is not affiliated with Ford or FMCC or any Ford dealership, and requiring Sterling 925 to clearly and unambiguously state to

any Ford lessee with whom Sterling 925 communicates orally that Sterling 925 is not affiliated with Ford or FMCC or any Ford dealership.

3.      For an order directing that Sterling 925 recall from the United States all products, labels, tags, signs, prints, packages, videos, advertisements, and other materials in its possession or under its control, bearing or using the Ford Marks or any simulation, reproduction, counterfeit, copy, or colorable imitation thereof, pursuant to 15 U.S.C. § 1118.

4.      For an order directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving the erroneous impression that any service or product manufactured, sold, or otherwise circulated or promoted by Sterling 925 is authorized by Ford or related in any way to Ford's products or services.

5.      For an order directing that Sterling 925 file with the Court and serve upon Ford's counsel within thirty (30) days after entry of such judgment, a report in writing under oath, setting forth in detail the manner and form in which Sterling 925 has complied with the above.

6.      For an order requiring Sterling 925 to file with the Court and provide to Ford an equitable accounting and disgorgement of all revenues and/or profits wrongfully realized by Sterling 925 in the United States through unfair competition, false advertising, or use of the Ford Marks and any counterfeits thereof, including but not limited to FORD®, FORD CREDIT®, and FORD MOTOR CREDIT COMPANY™.

7.      For an award of Ford's costs and disbursements incurred in this action, including Ford's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117 and Michigan law, including M.C.L. § 445.911(2).

8.       For an award of actual damages pursuant to 15 U.S.C. § 1117 and M.C.L. § 445.911(2).

16

9.      For an award of Ford's damages trebled or, alternatively, an award of Sterling

925's wrongful profits from the United States trebled, whichever is greater, plus Ford's costs and

attorney's fees, pursuant to 15 U.S.C. § 1117.

10.     For an award of interest, including pre-judgment interest, on the foregoing sums.

11.     For such other and further relief as the Court may deem just and proper.

Dated:  April 30th, 2013.

Respectfully submitted,

GREGORY D. PHILLIPS
CODY WINCHESTER
**PHILLIPS RYTHER & WINCHESTER**
600 East 124 South
Salt Lake City, Utah 84102
Tel:    (801) 935-4935
Fax:    (801) 935-4936

By: /s/ Gregory D. Phillips

*Attorneys for Plaintiff*

17

## **VERIFICATION**

Randall Honiss, under penalty of perjury of the laws of the United States, states:

That he is Lease Product Manager of Ford Motor Credit Company LLC ("FMCC"), a wholly-owned subsidiary of Ford Motor Company, and is responsible for FMCC's lease programs and procedures and the use of Ford intellectual property in connection with such programs and procedures; that he has read, is familiar with, and has personal knowledge of the contents and factual statements of the foregoing Verified Complaint and that the allegations thereof are true and correct to the best of his knowledge.  To the extent that matters are not within his personal knowledge, the facts stated therein have been assembled by authorized personnel, including counsel, and he is informed that the facts stated therein are true and correct.

Executed this 30 day of April, 2013, in Dearborn, Michigan

_____
Randall Honiss

18